

**ORDERED in the Southern District of Florida on November 9, 2011.**

A. Jay Cristol, Judge
United States Bankruptcy Court

_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In re:                                             Case No. 11-30042-BKC-AJC

A-1 MANAGEMENT CORP.,                              Chapter 11

     Debtor.
_____/

### ORDER GRANTING BRANCH BANKING AND TRUST COMPANY'S MOTION FOR RELIEF FROM STAY

THIS CAUSE came before this Court upon a final evidentiary hearing on October 6, 2011 at 3:00 p.m. on Branch Banking and Trust Company's motion for relief from stay (DE 14). The Court, having considered the pleadings, the testimony of witnesses and experts, documents and appraisal reports admitted into evidence, arguments of counsel and applicable law, and being otherwise duly apprised in the premises, makes the following findings of fact and conclusions of law:

## FINDINGS OF FACT

1.    On July 19, 2011, A-1 Management Corp. ("Debtor") filed a petition for relief under Chapter 11 of Title 11 of the United States Code.

2.    The Debtor is a single asset real estate entity. Its sole asset is a vacant parcel of mixed use real property located on the northeastern border of the Overtown District at 1950 NW 1st Avenue, Miami, Florida (the "Property").

3.    BB&T is the Debtor's largest creditor, holding a final judgment of foreclosure against the Property that was entered on June 15, 2011 in the amount of $5,662,044.96. *See also* Debtor's Schedule A (listing BB&T's claim at $5,662,044.96).

*VALUE OF THE PROPERTY:*

4.    At the October 6, 2011 hearing on BB&T's motion for relief from stay, both the Debtor and BB&T provided expert appraisal testimony on the value of the Property.

5.    Greg R. Gunter, MAI, MRICS, of H & G Commercial Group, LLC testified as an expert witness on behalf of BB&T. Gunter stated that in his opinion the value of the Property is $2,700,000.00, as reflected in his appraisal report admitted into evidence (the "Gunter Appraisal").

6.    The Debtor's expert, Allan F. Friedman, MAI of Friedman & Company, Inc. testified that in his opinion the value of the Property is $7,300,000.00, as reflected in his appraisal report also admitted into evidence (the "Friedman Appraisal").

7.    Both experts adopted the sales comparison approach and took into consideration the environmental remediation and zoning changes that had occurred since the debtor purchased the Property for $1,625,000.00 in 2004. Nevertheless, the experts arrived at wildly different valuations.

8. The Gunter Appraisal used comparables that appear to be closer in proximity to the Property than those used in the Friedman Appraisal.

9. The downward adjustments for location made to the comparables in the Gunter Appraiser were substantiated by Gunter's report and testimony at the hearing. *See* Gunter Appraisal at 38. Based upon Gunter's adjusted values, the value of the Property was determined to be $24.92 per square foot. By comparison, the Friedman Appraisal makes no adjustments for location for those comparable sales within the Miami city limits. *Compare* Friedman Appraisal at 64, ¶3 *with* Friedman Appraisal at 71-73.

10. The summary of land listings in the Friedman Appraisal which are most similar to the subject Property in terms of the proposed high unit density, close proximity and zoning are Land listings 5, 6 and 7. *See* Friedman Appraisal at 58. However, the price per unit listings of these comparable properties, as stated in the Friedman Appraisal, are lower than that adopted by the Friedman Appraisal regarding the Property.

11. Both experts agreed that the applicable definition of "highest and best use" requires both financial and practical feasibility. *See* Gunter Appraisal at 27; *see also* Friedman Appraisal at 42. The Gunter Appraisal concludes that the highest and best use is to hold the property for future development. *See* Gunter Appraisal at 30. The Friedman Appraisal analysis of highest and best use leans further towards the development of the property into a multi-family residential apartment facility usage with associated commercial component. *See* Friedman Appraisal at 51. As both experts agreed, however, the proposed development project is not economically feasible at this time. It was also revealed at the hearing that the tentative plat upon which the development depends has expired. Thus, the proposed development is not shovel

ready and a reasonable valuation of the property must involve holding the vacant property for future development as made clear by Gunter's report.

12. The Friedman Appraisal also references offers to purchase the Property in 2008 for $7,500,000.00, explaining that those offers fell through due to soft market conditions. *See* Friedman Appraisal at 4. While the Friedman Appraisal persistently reiterates that soft market conditions still exist, it somehow reaches a very similar valuation to those previous contracts that fell through.

13. Finally, there is a third appraisal by the Miami-Dade County Property Appraiser, which valuation was included in both the Gunter and Friedman reports. The Miami-Dade County Property Appraiser's tax assessed valuation for the Property for the year 2010 is $1,550,673.00. The Court believes this value is reliable based upon the fact that the Miami-Dade County Property Appraiser has no dog in this fight. The Court recognizes that the values set forth by the Miami-Dade County Property Appraiser may be less than what the actual market value is, by as much as 15%; however, even if the Court were to increase the Miami-Dade County Property Appraiser's value by an additional 15%, the value of the Property would still only be $1,783,273.95 – a far cry from the $7,300,000.00 value attributed to the Property by the Debtor.

14. BB&T's cross-examination of the Debtor's President, Luis Dominguez, revealed that even with a tax assessed valuation of $1,550,673.00, an application was still filed on the Debtor's behalf requesting a lower tax assessed value for 2011. The Debtor's application to lower the tax assessed value earlier in 2011 is inconsistent with its assertion of greater value in this bankruptcy case. Indeed, the $7,300,000.00 valuation asserted by the debtor is unrealistic in light of a $1,550,673 tax assessed value.

15. In light of the above, the Court accepts the value asserted by BB&T and values the Property at **$2,700,000.00**.

## CONCLUSIONS OF LAW

Given the $2,700,000.00 valuation of the Property securing BB&T's claim in the amount of $5,662,044.96 bearing judicial interest through the petition date, there is no equity in the Property.

Moreover, Debtor has failed to establish that the Property is necessary to an effective reorganization. Yes, this is a single asset real estate case, but the Debtor still has the burden to establish that the collateral is "necessary to an effective reorganization." 11 U.S.C. § 362 (g)(2). "What this requires is not merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization *that is in prospect*. This means…that there must be 'a reasonable possibility of a successful reorganization within a reasonable time.'" *United Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365 (1988). In this case, at the time of the hearing on valuation, the Debtor did not offer sufficient evidence to establish it has a reasonable prospect for reorganizing, whether by keeping, refinancing or selling the property. *See Albany Partners v. WP Westbrook, Jr. et al., (In re Albany Partners)*, 749 F.2d 670 (11th Cir. 1984) (requiring showing of a realistic possibility of an effective reorganization to avoid dismissal of case). Therefore, for the foregoing reasons, it is

**ORDERED AND ADJUDGED** as follows:

1. That the value of the Property is $2,700,000.00.

2.     That the Motion for Relief from Stay is granted so that BB&T may pursue completion of an action in state court for foreclosure of its mortgage encumbering the following property:

> Lots 1 and 2, of Block 18 of RESUB of Lots 4 to 12, inclusive, and alley between Lots 4, 5, 6 and 7, of Block 18, of WADDELL'S RESUBDIVISION OF BLOCKS 16-18-22-24 & 28 & Part of 20 of JOHNSON AND WADDELL ADDITION, according to the Plat thereof, as recorded in Plat Book 41, at Page 13 of the Public Records of Miami-Dade County, Florida
>
> AND
>
> Lots 1, 2, 3 and 13 to 18, inclusive, of Block 18, of WADDELL'S RESUBDIVISION OF BLOCKS 16-18-22-24 & 28 & Part of 20 of JOHNSON AND WADDELL ADDITION TO MIAMI, FLORIDA according to the Plat thereof, as recorded in Plat Book 9 at page 136 of the Public Records of Miami-Dade County, Florida.
>
> NOW KNOWN AS
>
> Tract "A" and "B", NATIONAL LINEN PROPERTIES, according to the Plat thereof, as recorded in Plat Book 115, at Page 24 of the Public Records of Miami-Dade County, Florida.

3.     That this Order granting relief from the automatic stay is entered for the sole purpose of allowing BB&T to pursue in rem relief against the property and any other remedies BB&T may have under applicable non-bankruptcy law; provided that BB&T shall not seek or obtain an in personam judgment against Debtor.

4.     The fourteen (14) day stay of this Order imposed by Federal Rule of Bankruptcy Procedure 4001(a)(3) is waived; this Order is final and is effective immediately upon entry.

5.     In accordance with this Court's interim order on BB&T's motion for relief from stay in the related case *In re Cameo Apartments, Ltd.*, Case No. 11-30046-AJC (Docket # 32), an evidentiary hearing on BB&T's motion for relief from stay in that matter (Docket # 13) will be scheduled for the next available date, and an order to that effect will be entered in the *Cameo Apartments* case.

###

Submitted by and copies furnished to:

Stephanie Reed Traband, Esq.
601 Brickell Key Drive, Suite 500
Miami, Florida 33131
Telephone:  (305) 679-5700
straband@joneswalker.com


Stephanie Reed Traband is directed to serve a copy of this Order on all parties entitled to service and to file with the court a certificate of service conforming with Local Rule 2002-1(F).